NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0721
    Facsimile:  (213) 894-0141
    E-mail:     John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>                  v.<br><br>HECTOR MANUEL PERILLA UMBARILA,<br>  aka "Hector Manuel Perilla<br>      Umbarilla,"<br>  aka "Hector Perilla,"<br>  aka "Steven Bernal,"<br><br>        A Fugitive from the<br>        Government of the<br>        Republic of<br>        Colombia. | No. 5:19-CV-02383-CJC-KK<br><br>UNITED STATES' EXTRADITION<br>MEMORANDUM<br><br>[18 U.S.C. § 3184]<br><br>Hearing Date: February 27, 2020<br>Hearing Time: 9:30 a.m.<br>Location:    Courtroom of the<br>             Honorable Kenly Kiya<br>             Kato |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California, and Assistant United States Attorney John J. Lulejian,

hereby submits its Extradition Memorandum.

The Memorandum is based on all of the documents and exhibits previously lodged and filed under seal and publicly with the Court (in original and redacted forms), which were submitted by the Government of the Republic of Colombia in support of its request for extradition in this matter.

Dated: December 15, 2019          Respectfully submitted,

                                  NICOLA T. HANNA
                                  United States Attorney

                                  BRANDON D. FOX
                                  Assistant United States Attorney
                                  Chief, Criminal Division

                                  _/s/ John J. Lulejian_
                                  JOHN J. LULEJIAN
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES..............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS.............................................3

     A.   Factual Background.......................................3

     B.   Procedural Background....................................8

III. LEGAL FRAMEWORK AND ARGUMENT..................................8

     A.   Applicable Law Concerning Extradition Hearings...........8

          1.   Sui Generis Nature of Extradition Proceedings.......8

          2.   General Standards and the Elements of Extradition...9

          3.   Probable Cause Determination.......................11

          4.   Rules of Criminal Procedure and Evidence Do Not
               Apply..............................................12

          5.   Limitations on Fugitive's Evidence.................14

          6.   The Rule of Non-Inquiry............................15

     B.   THE ELEMENTS FOR EXTRADITION ARE MET....................16

          1.   There is Subject Matter Jurisdiction...............16

          2.   There is Personal Jurisdiction.....................17

          3.   Extradition Treaty is in Force.....................17

          4.   The Fugitive is Sought for Offenses Covered by
               the Treaty.........................................17

          5.   There is Probable Cause............................18

               a.   Probable Cause is Established Because
                    PERILLA UMBARILA was Convicted of Aggravated
                    Homicide, Homicide, and Robbery with
                    Violence in Colombia..........................20

i

## TABLE OF CONTENTS (CONTINUED)

DESCRIPTION                                                                PAGE

        b.   In Any Event, the Evidence Described In the
           Superior Tribunal's Judgment of Conviction
           Supports a Finding of Probable Cause...........21

        c.   The Individual Appearing Before the Court is
           the Fugitive...................................24

IV.   CONCLUSION....................................................24

**TABLE OF AUTHORITIES**

FEDERAL CASES                                                    PAGES

Afanasjev v. Hurlburt,
    418 F.3d 1159 (11th Cir. 2005) ...................... 9, 12, 19

Arnbjornsdottir-Mendler v. United States,
    721 F.2d 679 (9th Cir. 1983) ............................. 16

Austin v. Healey,
    5 F.3d 598 (2d Cir. 1993) ................................ 16

Barapind v. Enomoto,
    400 F.3d 744 (9th Cir. 2005) (en banc) .................... 14

Benson v. McMahon,
    127 U.S. 457 (1888) ................................... 9, 19

Bingham v. Bradley,
    241 U.S. 511 (1916) ...................................... 11

Bovio v. United States,
    989 F.2d 255 (7th Cir. 1993) .......................... 14, 15

Charlton v. Kelly,
    229 U.S. 447 (1913) .................................... 9, 15

Collins v. Loisel,
    259 U.S. 309 (1922) ................................... passim

Cucuzzella v. Keliikoa,
    638 F.2d 105 (9th Cir. 1981) ............................. 11

DeSilva v. DiLeonardi,
    125 F.3d 1110 (7th Cir. 1997) ............................ 14

Eain v. Wilkes,
    641 F.2d 504 (7th Cir. 1981) ............................. 14

Emami v. U.S. Dist. Court for N. Dist.,
    834 F.2d 1444 (9th Cir. 1987) ............................ 13

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

Esposito v. I.N.S.,

    936 F.2d 911 (7th Cir. 1991) ............................... 21

Factor v. Laubenheimer,

    290 U.S. 276 (1933) ....................................... 11

Fernandez v. Phillips,

    268 U.S. 311 (1925) ............................... 11, 12, 19

Gallina v. Fraser,

    278 F.2d 77 (2d Cir. 1960) ................................ 21

Glucksman v. Henkel,

    221 U.S. 508 (1911) ................................... 12, 16

Greci v. Birknes,

    527 F.2d 956 (1st Cir. 1976) .............................. 12

Haxhiaj v. Hackman

    528 F.3d 282 (4th Cir. 2008) ...................... 20, 21, 22

Hooker v. Klein,

    573 F.2d 1360 (9th Cir. 1978) ............................. 14

Hoxha v. Levi,

    465 F.3d 554 (3d Cir. 2006) ............................... 19

In re Extradition of Bilanovic,

    No. 1:08-mj-74, 2008 WL 5111846

    (W.D. Mich. Dec. 3, 2008) ................................. 22

In re Extradition of Blasko,

    No. 1:17-mc-00067, 2018 WL 6044921

    (E.D. Cal. Nov. 19, 2018) ................................. 22

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

In re Extradition of Camelo-Grillo,

    No. 16-cv-9026, 2017 WL 2945715

    (C.D. Cal. July 10, 2017) .................................. 22

In re Extradition of Hughes,

    No. 12-1831-JGB MLG, 2013 WL 1124294

    (C.D. Cal. Mar. 18, 2013) ................................. 21

In re Extradition of Mainero

    990 F. Supp. 1208(S.D. Cal. 1997) ......................... 17

In re Extradition of Manea,

    No. 15-mj-157, 2018 WL 1110252

    (D. Conn. Mar. 1, 2018) ................................... 22

In re Extradition of McMullen,

    989 F.2d 603 (2d Cir. 1993) ............................... 12

In re Extradition of Risner,

    No. 3:18-mj-765, 2019 WL 6118377

    (N.D. Tex. Nov. 18, 2019) ................................. 22

In re Ryan,

    360 F. Supp. 270 (E.D.N.Y. 1973) .......................... 13

Jhirad v. Ferrandina,

    536 F.2d 478 (2d Cir. 1976) ............................. 8, 9

Jimenez v. Aristeguieta,

    311 F.2d 547 (5th Cir. 1962) ............................. 16

Koskotas v. Roche,

    931 F.2d 169 (1st Cir. 1991) ............................. 12

Lo Duca v. United States,

    93 F.3d 1100 (2d Cir. 1996) .............................. 10

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

Lopez-Smith v. Hood,
    121 F.3d 1322 (9th Cir. 1997) .............................. 16

Mainero v. Gregg,
    164 F.3d 1199 (9th Cir. 1999) .............................. 13

Manta v. Chertoff,
    518 F.3d 1134 (9th Cir. 2008) .............................. 11

Martin v. Warden,
    993 F.2d 824 (11th Cir. 1993) ...................... 8, 9, 12

Melia v. United States,
    667 F.2d 300 (2d Cir. 1981) ............................... 12

Messina v. United States,
    728 F.2d 77 (2d Cir. 1984) ................................ 12

Mirchandani v. United States,
    836 F.2d 1223 (9th Cir. 1988) ......................... 12, 19

Neely v. Henkel,
    180 U.S. 109 (1901) ....................................... 9

Ordinola v. Hackman,
    478 F.3d 588 (4th Cir. 2007) .............................. 10

Ornelas v. Ruiz,
    161 U.S. 502 (1896) ...................................... 12

Prasoprat v. Benov,
    421 F.3d 1009 (9th Cir. 2005) .................... 9, 10, 16

Quinn v. Robinson,
    783 F.2d 776 (9th Cir. 1986) .................... 11, 13, 14

Romeo v. Roache,
    820 F.2d 540 (1st Cir. 1987) .............................. 12

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

Sabatier v. Dabrowski,

    586 F.2d 866 (1st Cir. 1978) ............................. 12

Santos v. Thomas,

    830 F.3d 987 (9th Cir. 2016) .......................... passim

Shapiro v. Ferrandina,

    478 F.2d 894 (2d Cir. 1973) .......................... 10, 15

Sidali v. INS,

    107 F.3d 191 (3d Cir. 1997) .......................... 19, 20

Simmons v. Braun,

    627 F.2d 635 (2d Cir. 1980) ............................. 12

Spatola v. United States,

    925 F.2d 615 (2d Cir. 1991) ............................. 20

Then v. Melendez,

    92 F.3d 851 (9th Cir. 1996) ............................. 17

United States ex rel. Sakaguchi v. Kaulukukui,

    520 F.2d 726 (9th Cir. 1975) ............................. 12

United States v. Avdic,

    No. CR. 07-M06, 2007 WL 1875778

    (D.S.D. June 28, 2007) ................................. 21

United States v. Bogue,

    Case No. CRIM.A. 98-572-M, 1998 WL 966070

    (E.D. Pa. Oct. 13, 1998) ................................. 21

United States v. Lui Kin-Hong,

    110 F.3d 103 (1st Cir. 1997) ............................. 15

vii

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

United States v. Pena-Bencosme,

    No. 05-M-1518, 2007 WL 3231978

    (E.D.N.Y. Oct. 30, 2007) .................................. 15

United States v. Wiebe,

    733 F.2d 549 (8th Cir. 1984) ............................. 11

Valencia v. Limbs,

    655 F.2d 195 (9th Cir. 1981) ............................. 11

Ward v. Rutherford,

    921 F.2d 286 (D.C. Cir. 1990) ............................ 16

Yapp v. Reno,

    26 F.3d 1562 (11th Cir. 1994) ............................ 12

Zanazanian v. United States,

    729 F.2d 624 (9th Cir. 1984) ............................. 11


FEDERAL STATUTES

18 U.S.C. § 1111 ............................................. 18

18 U.S.C. § 2111 ............................................. 18

18 U.S.C. § 3181 ............................................. 17

18 U.S.C. § 3184 ......................................... passim

18 U.S.C. § 3186 ........................................ 9, 15

18 U.S.C. § 3190 ............................................. 13


FEDERAL RULES

Fed. R. Crim. P. 1(a)(5) .................................... 12

Fed. R. Evid. 1101(d)(3) .................................... 12

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

TREATIES

Extradition Treaty with the Republic of Colombia,
U.S.-Colom., Sept. 14, 1979,
S. Treaty Doc. No. 97-8 (1981) ........................ _passim_

STATE STATUTES

Cal. Penal Code §§ 187-89 ...................................... 18

Cal. Penal Code §§ 211-13 ...................................... 18

FOREIGN STATUTES

Colom. C. Pen. art. 103 .................................. 1, 8, 17

Colom. C. Pen. art. 104.2 ................................ 1, 8, 17

Colom. C. Pen. art. 239 .................................. 1, 8, 17

Colom. C. Pen. art. 240.1 ................................ 1, 8, 17

Colom. C. Pen. art. 240.2 ................................ 1, 8, 18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3      The fugitive, HECTOR MANUEL PERILLA UMBARILA, also known as

4 ("aka") "Hector Manuel Perilla Umbarilla," aka "Hector Perilla," aka

5 "Steven Bernal" ("PERILLA UMBARILA" or "the fugitive"), has been

6 convicted in the Republic of Colombia ("Colombia") for murdering and

7 robbing his aunt in her apartment, and also murdering the apartment

8 building's security guard.  Colombian authorities determined that the

9 aunt had been hit in the head and stabbed in the neck, and a sock had

10 been put in her mouth to keep her from screaming.  The security guard

11 had been stabbed nine times in his neck, back and upper extremities,

12 and there were defense wounds on his hands and forearms.

13      PERILLA UMBARILLA admitted that he visited his aunt on the

14 afternoon of the murder, that he came home wearing different

15 clothing, and that he had brought back items that had belonged to his

16 aunt.  Yet, there was no sign of a forced entry into the aunt's

17 apartment which could indicate that someone else committed the murder

18 after PERILLA UMBARILLA departed.  Further, the police never found

19 the change of clothes he said he had left at his aunt's apartment.

20      Colombia submitted a request to the United States for PERILLA

21 UMBARILLA's extradition so that he can serve his 600-month prison

22 sentence for Aggravated Homicide, Homicide, and Robbery with

23 Violence, in violation of Articles 103, 104.2, 239, 240.1, and 240.2

24 of the Colombian Criminal Code.  (See Docket Nos. 1, 14, 19.).  In

25 accordance with its extradition treaty obligations, on October 4,

26 2019, the United States filed an extradition complaint in this

27 District and obtained an arrest warrant issued by United States

28

1    Magistrate Judge Steve Kim.[1]   (See Docket No. 2.).   On October 7,

2    2019, the United States Marshals Service arrested PERILLA UMBARILA.[2]

3    (See Docket No. 1.)

4         By statute, this Court is required to hold a hearing to consider

5    the evidence of criminality presented by Colombia and to determine

6    whether it is "sufficient to sustain the charge under the provisions

7    of the proper treaty or convention."  18 U.S.C. § 3184.  If the Court

8    finds PERILLA UMBARILA extraditable, it must certify that finding to

9    the Secretary of State, who will make the ultimate surrender

10   decision.

11        In this case, the requirements for certification have been met.

12   First, this Court is authorized to conduct the extradition

13   proceeding.  Second, this Court has jurisdiction over PERILLA

14   UMBARILA.  Third, the extradition treaty between the United States

15   and Colombia is in full force and effect.  Fourth, the offenses for

16   which PERILLA UMBARILA's extradition is sought are covered by the

---

[1] See U.S.-Colom., Sept. 14, 1979, S. Treaty Doc. No. 97-8 (1981) (the "Treaty").  A copy of the Treaty and the formal extradition request is annexed to the Declaration of Tom Heinemann ("Heinemann Decl."), which is attached as Exhibit A to the United States' Request for Extradition (Docket Nos. 14 & 19-1).  All original exhibits cited to or otherwise referenced herein were previously filed as attachments to the United States' Request for Extradition, which was filed on December 11, 2019 (Docket No. 14). Redacted copies of these documents were filed on December 15, 2019 (Docket No. 19).  As a result, they are not attached to this memorandum but instead are referenced by docket and CM/ECF page number.  The instant request for extradition is based upon all of the documents submitted by Colombia authorities, which have been filed with the Court.

[2] PERILLA UMBARILA's initial court appearances was on October 8, 2019.  (See Docket No. 7.)  At the initial hearing, the Unites States moved for detention.  (See Docket Nos. 7, 8.)  The Court found that no special circumstances existed warranting PERILLA UMBARILA's release, and ordered his continued detention.  (See Docket No. 7, 9.)

Treaty.  Finally, there is probable cause to believe PERILLA UMBARILA committed the offenses.

Accordingly, the United States respectfully requests that the Court certify PERILLA UMBARILA's extradition to Colombia for the Secretary of State's consideration.

**II.  STATEMENT OF FACTS**

The formal request for extradition summarizes the case's procedural history and includes, the law supporting the extradition request; various court documents from Colombia, including multiple copies of the decisions by both the trial and appellate courts; copies of the arrest orders issued by the Colombian court; and identification documents of PERILLA UMBARILA, from which the following facts may reasonably be derived:

**A.  Factual Background[3]**

On the evening of October 5, 2009, Maria Cristina Umbarila de Bernal ("Umbarila-Bernal") was murdered in her apartment along with the building's security guard, Audon Martinez-Mendez ("Martinez-Mendez"). (See Docket No. 19-5 at 25, 35.)  Umbarila-Bernal had been hit in the head and stabbed in the neck, and a sock had been put in her mouth to keep her from screaming. (See id. at 35.)  Martinez-Mendez had been stabbed nine times in his neck, back and upper extremities, and there were defense wounds on his hands and forearms. (See id.)  Umbarila-Bernal's bedroom, where she had been killed, was in disarray. (See id. at 35-36.)  Police discovered a smashed

---

[3] What follows is a brief summary of the facts.  The full facts developed during the litigation in Colombia and considered by the trial court and Superior Tribunal are set forth in their decisions in their respective decisions. (See Docket Nos. 19-3 at 41-78; 19-5 at 9-52.)

1   piggybank, emptied jewelry boxes, and an open wallet (or handbag).[4]

2   (See id. at 25, 36.)  A nightstand drawer and closet appeared to have

3   been rifled through.  (See id. at 36.)  However, there was no sign of

4   a forced entry to Umbarila-Bernal's apartment.  (See id.)

5       PERILLA UMBARILA was Umbarila-Bernal's nephew.  (See id. at 37.)

6   After returning from the United States to Colombia to start a

7   business, PERILLA UMBARILA lived with Umbarila-Bernal for

8   approximately one year.  (See id. at 36, 37, 43.)  At the time of the

9   murders, PERILLA UMBARILA was living with his girlfriend.  (See id.

10  at 36.)

11      PERILLA UMBARILA's business in Colombia was not successful.

12  (See id. at 43.)  Therefore, he asked Umbarila-Bernal and other

13  family members to lend him money.  (See id.)  Umbarila-Bernal,

14  however, declined to financially support her nephew and advised him

15  to move back to the United States, where he had a wife and children.

16  (See id.)

17      According to one of Umbarila-Bernal's daughters, her mother felt

18  unsafe after telling PERILLA UMBARILA that she would not financially

19  support him.  (See id. at 16, 18.)  Umbarila-Bernal decided to change

20  the locks to prevent PERILLA UMBARILA from entering her apartment

21  uninvited.  (See id.)

22      Another one of Umbarila-Bernal's daughters, said that a week

23  prior to the murders, PERILLA UMBARILA called his aunt and asked for

24  a loan of money.  (See id. at 19.)  When Umbarila-Bernal refused to

25  give him the loan, PERILLA UMBARILA reacted aggressively towards her.

26  (See id.)

27  _____

28      [4] Umbarila-Bernal saved COP (Colombian peso) 500 coins in her
    piggybank.  (See Docket No. 19-5 at 36.)

4

On the day of the murders, at approximately 3:00 p.m., PERILLA UMBARILA went to his aunt's apartment. (See id. at 19, 36.) One of Umbarila-Bernal's neighbors said that she saw PERILLA UMBARILA enter the apartment building around 3:00 p.m. (See id. at 15, 36.) PERILLA UMBARILA admitted that he went to his aunt's apartment around 3:00 p.m. on the afternoon of the murders, but claimed that he went there to help her recover from dental surgery. (See id. at 17.)

At approximately 5:00 p.m., Umbarila-Bernal and one of her daughters spoke by telephone for approximately five minutes. (See id. at 27, 36, 39.) During this call, Umbarila-Bernal told her daughter that PERILLA UMBARILA was still at her apartment. (See id. at 36, 39.) PERILLA UMBARILA claimed that he left the apartment around 5:00 p.m. or 5:30 p.m. (See id. at 19.)

Between approximately 5:30 p.m. and 5:35 p.m., a neighbor on the third floor of the apartment building heard shouts and noises coming from the second floor, where Umbarila-Bernal's apartment was located. (See id. at 12, 27.)

Between approximately 6:00 p.m. and 6:30 p.m., PERILLA UMBARILA returned home, where his girlfriend and another friend were present. (See id. at 13.) PERILLA UMBARILLA's girlfriend noticed that he was wearing different clothes from the ones he had worn when he left their home that morning and was carrying a blue suitcase. (See id. at 13, 36, 37.) When she asked him about the change of clothes, PERILLA UMBARILA told her that his original clothes were greasy from the machinery work he had performed earlier in the day, and therefore he had changed at his aunt's apartment and left his other clothes for his aunt to wash. (See id. at 13, 19, 22, 37.) Because PERILLA UMBARILA's girlfriend washed his clothes daily, she was not satisfied

with his explanation.  (See id. at 13.)  Law enforcement authorities were unable to locate the clothing that PERILLA UMBARILA claimed to have left at his aunt's home.  (See id. at 41.)

Between approximately 7:30 p.m. and 8:00 p.m., Martinez-Mendez's wife came to the apartment building where her husband worked as a security guard and noticed that he was not at his post.  (See id. at 19, 38.)  When a neighbor reported seeing PERILLA UMBARILA at the apartment building that day, Martinez-Mendez's wife grew concerned, because she knew PERILLA UMBARILA and her husband had argued before. (See id. at 38.)  Using one of her husband's keys, she opened up Umbarila-Bernal's apartment, and discovered Martinez-Mendez's body. (See id. at 19, 38.)

At approximately 9:05 p.m., a police officer, who had been called, went to Umbarila-Bernal's apartment and found Martinez-Mendez dead in the passageway.  (See id. at 12.)  The police officer also found Umbarila-Bernal dead in her bedroom, with a cloth in her mouth, and curled up with lots of blood.  (See id.)  In the bedroom, the police officer noticed a shattered piggybank and a wallet (or handbag) on the bed.  (See id.)

Later that evening PERILLA UMBARILA received a telephone call from his sister, who told her about what had happened at his aunt's home.  (See id. at 19.)  After that telephone call, between approximately 10:30 p.m. and 11:00 p.m., PERILLA UMBARILA left their house.  (See id. at 19-20.)

Shortly after PERILLA UMBARILA left their house, his girlfriend received a telephone call from PERILLA UMBARILA's co-worker, who said that PERILLA UMBARILA had killed Umbarila-Bernal and the security guard.  (See id. at 13.)  The co-worker asked PERILLA UMBARILA's

girlfriend to see if PERILLA UMBARILA had taken away bloody clothes or anything.  (See id. at 17.)  When PERILLA UMBARILA's girlfriend looked inside the blue suitcase that he brought home, she discovered a number of items, including some creams and sprays, mobile telephones, and women's jewelry.[5]  (See id. at 36.)

When PERILLA UMBARILA returned home at approximately 5:00 a.m. the next morning, he told his girlfriend that he had been falsely accused.  (See id. at 17.)  PERILLA UMBARILA said that he had gone to his aunt's home to help her after her dental surgery and had left there without incident.  (See id. at 17, 19.)  According to PERILLA UMBARILA, it was not unusual for him to have changed clothes at his aunt's home and he kept spare clothes there because his work required him to operate heavy machinery.  (See id. at 19.)  With regard to the items in the blue suitcase, PERILLA UMBARILA claimed that he had bought them at a good price with the intention to resell them for a profit.  (See id. at 17, 37.)

PERILLA UMBARILA maintained that he was not at Umbarila-Bernal's home at the time of the murders.  (See id. at 19.)  However, in contrast to his earlier explanation to his girlfriend, PERILLA UMBARILA said that he had been given the items in the suitcase by his aunt, who wanted him to sell the items so that he could afford to return to the United States.  (See id. at 13, 17-18.)  Yet, one of Umbarila-Bernal's daughters said that the creams and sprays actually belonged to her, and that they were due to be delivered to someone else who had asked for them.  (See id. at 42.)  In addition, the

---

[5] According to Umbarila-Bernal's daughters, these items belonged to their mother.  (See id. at 13.)  Further, PERILLA-UMBARILA's girlfriend also found 100 COP 500 coins.  (See id.)

7

mobile telephone which PERILLA UMBARILA claims was also given to him by Umbarila-Bernal, was actually activated in the United States, and she intended to use it there on an upcoming trip.  (See id.)

**B.    Procedural Background**

On September 27, 2010, the Second Circuit Criminal Court, Trials, in Bogata, Colombia, acquitted PERILLA UMBARILLA of the crimes of Aggravated Homicide, Homicide, and Robbery.  (See id. at 24, 25.)  The prosecutor appealed the acquittal.  Despite his obligation to do so, PERILLA UMBARILA did not participate in the appellate proceedings.  (See id. at 26.)  On March 29, 2011, the Superior Tribunal of the Judicial District of Bogota, Criminal Bench (the "Superior Tribunal") vacated the lower court's verdict and found PERILLA UMBARILA guilty of Aggravated Homicide, Homicide, and Robbery with Violence, in violation of Articles 103, 104.2, 239, 240.1, and 240.2 of the Colombian Criminal Code.  (See id. at 48-49.)  On that day, Justice Dagoberto Hernandez-Peña of the Superior Tribunal, issued warrants for PERILLA UMBARILA's arrest.  (See Docket No. 19-3 at 79-83.)

On April 4, 2011, the Superior Tribunal read its judgment, and sentenced PERILLA UMBARILA to a term of imprisonment of 600 months. The Superior Tribunal published its decision the following day.  (See Docket No. 19-5 at 52.)

**III. LEGAL FRAMEWORK AND ARGUMENT**

**A.    Applicable Law Concerning Extradition Hearings**

1.    Sui Generis Nature of Extradition Proceedings

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique in nature.  See, e.g., Martin v. Warden, 993 F.2d 824, 828 (11th Cir. 1993); Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir. 1976).  As

1   described in Jhirad, an extradition hearing is sui generis, with its

2   structure and process defined by statute and treaty.  Jhirad, 536

3   F.2d at 482.  An extradition hearing is not a criminal proceeding;

4   its purpose is to decide the sufficiency of the charge under the

5   relevant treaty, not guilt or innocence.  Neely v. Henkel, 180 U.S.

6   109, 123 (1901); Benson v. McMahon, 127 U.S. 457, 463 (1888); Santos

7   v. Thomas, 830 F.3d 987, 991 (9th Cir. 2016) (en banc); Afanasjev v.

8   Hurlburt, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005).

9        The limited nature of the hearing has resulted in special

10  procedural and evidentiary rules that apply.  For example, the person

11  whose extradition is sought is not entitled to the rights available

12  in a criminal trial.  See Neely, 180 U.S. at 122 (rights available to

13  one charged with criminal offense in this country not applicable to

14  offenses committed outside the United States against the laws of

15  another country); accord Charlton v. Kelly, 229 U.S. 447, 461 (1913);

16  Martin, 993 F.2d at 829.  The purpose of an extradition hearing under

17  Section 3184 is not to try the underlying charge; that is for the

18  foreign court.  See Neely, 180 U.S. at 123; Santos, 830 F.3d at 991-

19  92.

20           2.   General Standards and the Elements of Extradition

21        Extradition is primarily an executive responsibility with a

22  specially defined role for a judicial officer.  That judicial officer

23  is authorized by statute to determine whether to certify to the

24  Secretary of State that the evidence submitted by the country

25  requesting extradition is "sufficient to sustain the charge."  18

26  U.S.C. § 3184.  The Secretary of State, and not the Court, decides

27  whether the fugitive should be surrendered to the requesting country.

28  See 18 U.S.C. §§ 3184, 3186; Santos, 830 F.3d at 991; Prasoprat v.

9

1   <u>Benov</u>, 421 F.3d 1009, 1012 (9th Cir. 2005); <u>Martin</u>, 993 F.2d at 828;

2   <u>Lo Duca v. United States</u>, 93 F.3d 1100, 1110 n.10 (2d Cir. 1996).

3   At the extradition hearing, the Court should consider the

4   evidence presented on behalf of the requesting country and determine

5   whether the legal requirements for certification, as defined in the

6   relevant treaty, statutes, and case law, have been established.  If

7   any explanatory evidence is offered by the fugitive (<u>see</u> infra), the

8   Court rules on its admissibility.  Once the evidentiary record is

9   complete, the extradition judge should make findings on each of the

10  requirements for certification, including separate findings for each

11  offense as to which extradition is sought.  See <u>Shapiro v.</u>

12  <u>Ferrandina</u>, 478 F.2d 894 (2d Cir. 1973).  If the extradition

13  magistrate decides that the elements necessary for extradition are

14  present, he or she must issue a certificate of extraditability, which

15  is forwarded to the Department of State for disposition by the

16  Secretary of State.  See 18 U.S.C. § 3184.[6]

17  In order to issue a certificate of extraditability, the

18  extradition magistrate must find that: (1) the extradition magistrate

19  has jurisdiction to conduct extradition proceedings; (2) the

20  extradition magistrate has jurisdiction over the fugitive; (3) an

21  extradition treaty is in force; (4) the fugitive is being sought for

22  offenses for which the applicable treaty permits extradition; and (5)

23

24  ───────────────
      [6]  If the Court certifies the evidence to the Secretary of
    State, the Court must commit the fugitive to the custody of the
25  United States Marshal to await further determination by the Secretary
    regarding surrender to the representatives of the requesting state.
    See 18 U.S.C. § 3184.  The Court should then forward, or have
26  forwarded, a certified copy of the certification and commitment order
    to the Secretary of State, together with a copy of any evidence
27  outside the formal extradition package and a transcript of any
    testimony at the hearing.  See <u>id.</u>; <u>Ordinola v. Hackman</u>, 478 F.3d
28  588, 597 (4th Cir. 2007).

                                    10

1  there is sufficient evidence to establish probable cause that the

2  individual appearing in court is the fugitive who committed the

3  offense for which extradition is requested.  See Santos, 830 F.3d at

4  991; Manta v. Chertoff, 518 F.3d 1134, 1140 (9th Cir. 2008); Quinn v.

5  Robinson, 783 F.2d 776, 783, 790 (9th Cir. 1986); Zanazanian v.

6  United States, 729 F.2d 624, 625-26 (9th Cir. 1984).

7       When interpreting an extradition treaty, the extradition

8  magistrate must construe its provisions liberally, in a manner

9  favoring the obligation to surrender fugitives.  See Factor v.

10  Laubenheimer, 290 U.S. 276, 293-94, 298, 303 (1933); United States v.

11  Wiebe, 733 F.2d 549, 554 (8th Cir. 1984); Cucuzzella v. Keliikoa, 638

12  F.2d 105, 107 n.3 (9th Cir. 1981) ("[T]reaties should be construed to

13  enlarge the rights of the parties").  Moreover, the obligation to

14  surrender the fugitive to be tried for her alleged offenses "should

15  be construed more liberally than a criminal statute or the technical

16  requirements of criminal procedure."  Factor, 290 U.S. at 298.

17  Accordingly, "[f]orm is not to be insisted upon beyond the

18  requirements of safety and justice," Fernandez v. Phillips, 268 U.S.

19  311, 312 (1925), and objections that "savor of technicality" do not

20  find favor in court, Bingham v. Bradley, 241 U.S. 511, 517-18 (1916).

21          3.   Probable Cause Determination

22       The extradition magistrate is not authorized to determine

23  whether the evidence is sufficient to justify conviction, as that

24  determination will be made by the foreign court that handles the

25  case.  See Collins v. Loisel, 259 U.S. 309, 316 (1922); Santos, 830

26  f.3d at 992; Quinn, 783 F.2d at 815; Valencia v. Limbs, 655 F.2d 195,

27  198 (9th Cir. 1981).  The extradition magistrate need only determine

28  whether there is probable cause to believe that the fugitive

committed the offense or offenses for which extradition is sought.
See <u>Ornelas v. Ruiz</u>, 161 U.S. 502, 512 (1896).

In the extradition context, the Ninth Circuit has explicated the probable cause standard as asking "whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." <u>Mirchandani v. United States</u>, 836 F.2d 1223, 1226 (9th Cir. 1988) (quoting <u>Fernandez</u>, 268 U.S. at 312); <u>see also</u> <u>United States ex rel. Sakaguchi v. Kaulukukui</u>, 520 F.2d 726, 730-31 (9th Cir. 1975) ("magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause"). As to the form of the evidence, extradition is proper where the standard is met if the proof "is presented[], even in somewhat untechnical form according to our ideas." <u>Glucksman v. Henkel</u>, 221 U.S. 508, 512 (1911) (affirming extradition despite minor or technical objections).

4.   <u>Rules of Criminal Procedure and Evidence Do Not Apply</u>

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. See <u>Santos</u>, 830 F.3d at 992. Rule 1(a)(5) states that the rules are not applicable to the "extradition and rendition of a fugitive." The Federal Rules of Evidence are also inapplicable.[7] See <u>Santos</u>, 830 F.3d at 992. An example of the

---

[7] Rule 1101(d)(3) provides: "The rules (other than with respect to privileges) do not apply . . . [to] proceedings for extradition or rendition." <u>See also</u> <u>Afanasjev</u>, 418 F.3d at 1164-65; <u>Melia v. United States</u>, 667 F.2d 300 (2d Cir. 1981); <u>Greci v. Birknes</u>, 527 F.2d 956 (1st Cir. 1976). Moreover, the fugitive has no right to discovery, <u>Prasoprat</u>, 421 F.3d at 1014; <u>Koskotas v. Roche</u>, 931 F.2d 169, 175 (1st Cir. 1991); <u>Messina v. United States</u>, 728 F.2d 77, 80 (2d Cir. 1984); there is no Sixth Amendment right to a speedy trial, <u>Yapp v. Reno</u>, 26 F.3d 1562, 1565 (11th Cir. 1994); <u>Martin</u>, 993 F.2d at 829; <u>Sabatier v. Dabrowski</u>, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth Amendment guarantee against double jeopardy does not apply to

12

difference between a criminal trial and an extradition proceeding is that, in the latter, hearsay is permitted.  <u>See</u> <u>Collins</u>, 259 U.S. at 317; <u>Mainero v. Gregg</u>, 164 F.3d 1199, 1206 (9th Cir. 1999) ("it is well settled in this circuit that evidence [in an extradition proceeding] is not incompetent simply because it is hearsay"), <u>superseded by statute on other grounds</u>, Pub. L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112 Stat. 2681); <u>Emami v. U.S. Dist. Court for N. Dist.</u>, 834 F.2d 1444, 1451 (9th Cir. 1987) ("In the Ninth Circuit it has been repeatedly held that hearsay evidence that would be inadmissible for other purposes is admissible in extradition").[8]

Further, the calling of live witnesses is not contemplated at extradition proceedings.  "An extradition proceeding is not a trial. Indeed, the very purpose of extradition treaties is to obviate the necessity of confronting the accused with the witnesses against him." <u>Mainero</u>, 164 F.3d at 1207 (internal quotations and citation omitted); <u>see also</u> <u>Quinn</u>, 783 F.2d at 815-16 ("Barring hearsay from extradition proceedings would thwart one of the objectives of bilateral extradition treaties.").

---

successive extradition proceedings, <u>Collins</u>, 262 U.S. at 429; <u>In re Extradition of McMullen</u>, 989 F.2d 603, 612-13 (2d Cir. 1993); the exclusionary rule is not applicable, <u>Romeo v. Roache</u>, 820 F.2d 540, 545 (1st Cir. 1987); <u>Simmons v. Braun</u>, 627 F.2d 635, 636-37 (2d Cir. 1980); and the fugitive does not have the right to confront witnesses whose written statements are used against him, <u>Bingham</u>, 241 U.S. at 517.

[8] Indeed, "[a] determination of probable cause in an extradition proceeding may rest entirely upon hearsay."  <u>In re Ryan</u>, 360 F. Supp. 270, 273 (E.D.N.Y. 1973), <u>aff'd sub nom.</u> 478 F.2d 1397 (2d Cir. 1973).  Documents offered in evidence at an extradition hearing are admissible if they are certified by the principal diplomatic or consular officer of the United States resident in the country requesting extradition, 18 U.S.C. § 3190, which is the case here.

5.   Limitations on Fugitive's Evidence

The fugitive's grounds for opposing an extradition request are limited.  A fugitive may not introduce evidence that contradicts the evidence submitted by the requesting country "[b]ecause extradition courts do not weigh conflicting evidence in making their probable cause determinations."  Barapind v. Enomoto, 400 F.3d 744, 749 (9th Cir. 2005) (en banc) (internal quotation marks and citation omitted). In other words, the fugitive cannot offer evidence that would lead to an evidentiary dispute.  See Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978); Santos, 830 F.3d at 992; Barapind, 400 F.3d at 749-50.  That is necessarily so because the introduction of such evidence "would convert the extradition into a full-scale trial, which it is not to be."  Eain v. Wilkes, 641 F.2d 504, 511 (7th Cir. 1981); see also Hooker, 573 F.2d at 1368 (a person fighting extradition is "not permitted to introduce evidence on the issue of guilt or innocence").  A fugitive may therefore only introduce evidence explaining the evidence submitted in support of the extradition request.  See Barapind, 400 F.3d at 749.  Hence, the extradition magistrate does not weigh conflicting evidence and determine what to credit, "but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense."  Quinn, 783 F.2d at 815.

It is also well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings.  See Charlton, 229 U.S. at 462; Collins, 259 U.S. at 316-17; Santos, 830 F.3d at 993; Hooker, 573 F.2d at 1368; DeSilva v. DiLeonardi, 125 F.3d 1110, 1112 (7th Cir. 1997).  A fugitive may not introduce evidence that (1) merely conflicts with the evidence submitted on

14

behalf of the demanding state, <u>Collins</u>, 259 U.S. at 315-17; (2) attempts to establish an alibi, <u>Shapiro</u>, 478 F.2d at 901; (3) suggests an insanity defense, <u>Charlton</u>, 229 U.S. at 462; (4) seeks to impeach the credibility of the demanding country's witnesses, <u>Bovio v. United States</u>, 989 F.2d 255, 259 (7th Cir. 1993); or (5) seeks to establish a self-defense argument, <u>United States v. Pena-Bencosme</u>, No. 05-M-1518, 2007 WL 3231978, at *7 (E.D.N.Y. Oct. 30, 2007).  <u>See also</u> <u>Santos</u>, 830 F.3d at 993 ("[A]n individual contesting extradition may not, for example, present alibi evidence, facts contradicting the government's proof, or evidence of defenses like insanity, as this tends to call into question the credibility of the government's offer of proof.") (internally citing <u>Hooker</u>, 573 F.2d at 1368.)These issues, which require factual and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.

      6.   <u>The Rule of Non-Inquiry</u>

All matters raised by the fugitive as a defense to extradition, other than those related to the requirements for certification, are to be considered by the Secretary of State, not by the Court. <u>See</u> 18 U.S.C. §§ 3184 & 3186.  Further, the Court should not investigate the fairness of the requesting country's justice system.  <u>United States v. Lui Kin-Hong</u>, 110 F.3d 103, 110 (1st Cir. 1997).  It is the role of the Secretary of State, not judicial officers, to determine whether extradition should be denied on humanitarian grounds or on

1  account of the treatment the fugitive will likely receive on return

2  to the requesting country.  Prasoprat, 421 F.3d at 1016.[9]

3  **B.   THE ELEMENTS FOR EXTRADITION ARE MET**

4      In the instant case, the elements necessary for the Court to

5  certify the fugitive's eligibility for extradition have been met.

6  There is subject matter and personal jurisdiction over PERILLA

7  UMBARILLA.  A valid extradition treaty permits extradition for the

8  offenses charged in Colombia.  And there is probable cause to believe

9  that PERILLA UMBARILA  committed the offenses.

10      1.   There is Subject Matter Jurisdiction

11      The extradition statute authorizes proceedings to be conducted

12  by "any justice or judge of the United States, or any magistrate

13  authorized so to do by a court of the United States, or any judge of

14  a court of record of general jurisdiction of any State." 18 U.S.C.

15  § 3184.  Consequently, both magistrate judges and district judges may

16  render a "certification" under Section 3184.  See Austin v. Healey, 5

17  F.3d 598, 601-02 (2d Cir. 1993); Ward v. Rutherford, 921 F.2d 286,

18  287 (D.C. Cir. 1990); Jimenez v. Aristeguieta, 311 F.2d 547, 553-55

19  (5th Cir. 1962).  Here, General Order 05-07 of the United States

20  District Court for the Central District of California also delegates

21  to magistrate judges the authority to handle extradition matters.

22

23

24  _____

25      [9]   See also Lopez-Smith v. Hood, 121 F.3d 1322, 1327 (9th Cir. 1997) (courts generally refrain from examining penal systems of requesting nations); Arnbjornsdottir-Mendler v. United States, 721

26  F.2d 679, 683 (9th Cir. 1983) ("The rationale is that such matters are to be determined solely by the executive branch"), superseded by

27  statute on other grounds, Pub. L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112 Stat. 2681).  As Justice Holmes said, "[w]e are

28  bound by the existence of an extradition treaty to assume that the trial will be fair." Glucksman, 221 U.S. at 512.

1  Accordingly, this Court is authorized to conduct this extradition
2  proceeding.
3        2.   There is Personal Jurisdiction
4        A United States Magistrate Judge in the Central District of
5  California has jurisdiction over PERILLA UMBARILA because he was
6  "found" in this District when the Marshals arrested him in Los
7  Angeles, California, on October 7, 2019.  See In re Extradition of
8  Mainero, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997).  When the fugitive
9  is "found within [this] jurisdiction," the personal jurisdictional
10  requirement of 18 U.S.C. § 3184 is met.
11        3.   Extradition Treaty is in Force
12        There is an extradition treaty in full force and effect between
13  the United States and Colombia.  See 18 U.S.C. § 3181 (Historical and
14  Statutory Notes); see also Docket Nos. 14, Ex. A; 19-1 (Heinemann
15  Decl.).  The State Department's conclusion that the Treaty is in full
16  force and effect, as expressed in the Heinemann Declaration, is
17  entitled to deference.  See Then v. Melendez, 92 F.3d 851, 853 (9th
18  Cir. 1996); Mainero, 990 F. Supp. at 1216.
19        4.   The Fugitive is Sought for Offenses
20             Covered by the Treaty
21        Extradition treaties create an obligation for the United States
22  to surrender fugitives under the circumstances defined in the treaty.
23  Article 1 of the Treaty provides for the return of fugitives charged
24  with or convicted of "any of the crimes specified in Article II of
25  this Treaty."  (Docket No. 19-1 at 13.)  The documents submitted by
26  the requesting state establish that the Superior Tribunal found
27  PERILLA UMBARILA guilty of Aggravated Homicide, Homicide, and Robbery
28  with Violence, in violation of Articles 103, 104.2, 239, 240.1, and

17

240.2 of the Colombian Criminal Code.  In so deciding, the Superior Tribunal vacated a lower court's acquittal of PERILLA UMBARILA of the crimes with which he had been charged.  On April 4, 2011, the Superior Tribunal read its judgment, and sentenced PERILLA UMBARILA to a term of imprisonment of 600 months.  The Superior Tribunal published its decision the following day.

Article 2(1) of the treaty applicable here defines extraditable offenses as follows:

> (a) Offenses described in the Appendix to this Treaty which are punishable under the laws of both Contracting Parties; or
>
> (b) Offenses, whether listed in the Appendix to this Treaty or not, provided they are punishable under the Federal laws of the United States and the laws of the Republic of Colombia.

(Docket No. 19-1 at 13.)

In the instant case, Aggravated Homicide, Homicide, and Robbery with Violence, all appear in various forms in the Appendix.  Further, PERILLA UMBARILA's criminal activity in Colombia, had it occurred in the United States, would be subject to prosecution under both federal and state law.  See 18 U.S.C. § 1111 (Murder), 2111 (Robbery); Cal. Penal Code §§ 187-89 (Homicide), 211-13 (Robbery).

5.   There is Probable Cause

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause.  The Court must conclude that there is probable cause to believe that the crime charged by Colombia was committed and the person before the Court committed it.  See

18

1   Hoxha v. Levi, 465 F.3d 554, 561 (3d Cir. 2006).  The evidence is

2   sufficient, and probable cause is established, if "there was any

3   evidence warranting the finding that there was a reasonable ground to

4   believe the accused guilty."  Mirchandani, 836 F.2d at 1226.  The

5   Supreme Court stated in Benson, 127 U.S. at 463:

6           the proceeding before the commissioner is not to be regarded

7           as in the nature of a final trial by which the prisoner

8           could be convicted or acquitted of the crime charged against

9           him, but rather of the character of those preliminary

10          examinations which take place every day in this country

11          before an examining or committing magistrate for the purpose

12          of determining whether a case is made out which will justify

13          the holding of the accused, either by imprisonment or under

14          bail, to ultimately answer to an indictment, or other

15          proceeding, in which he shall be finally tried upon the

16          charge made against him.

17  See also Collins, 259 U.S. at 316 ("The function of the

18  committing magistrate is to determine whether there is competent

19  evidence to justify holding the accused to await trial, and not

20  to determine whether the evidence is sufficient to justify a

21  conviction."); Fernandez, 268 U.S. at 312 ("Competent evidence to

22  establish reasonable grounds is not necessarily evidence

23  competent to convict."); accord Afanasjev, 418 F.3d at 1165 n.11;

24  Barapind, 400 F.3d at 752; Sidali v. INS, 107 F.3d 191, 199 (3d

25  Cir. 1997).

                    *a.    Probable Cause is Established Because PERILLA*

                           *UMBARILA was Convicted of Aggravated Homicide,*

                           *Homicide, and Robbery with Violence in Colombia*

Where the person sought already has been convicted, the conviction is dispositive of the issue of probable cause.  See Sidali, 107 F.3d at 196 ("[A] foreign conviction obtained after a trial at which the accused is present is sufficient to support a finding of probable cause for the purposes of extradition."); Spatola v. United States, 925 F.2d 615, 618 (2d Cir. 1991) ("[Where] there has been a judgment of conviction [entered by a foreign court], there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause."); In re Extradition of Hughes, No. 12-1831-JGB MLG, 2013 WL 1124294, at *6 (C.D. Cal. Mar. 18, 2013) ("Where, as here, the fugitive has already been convicted, the conviction is dispositive of the issue of probable cause.").

Here, PERILLA UMBARILA was tried, convicted, and sentenced for the crimes of Aggravated Homicide, Homicide, and Robbery with Violence in Colombia.  (See Docket No. 19-5 at 48-49.)  Thus, this Court need not "mak[e] an independent assessment of the facts surrounding [the] offenses" and may rely solely on a certified copy of the foreign conviction.  Haxhiaj v. Hackman, 528 F.3d 282, 290 (4th Cir. 2008).  As set forth above, Colombia has provided a copy of the Superior Tribunal's judgment, and the Court may rely on these documents as sufficient evidence that PERILLA UMBARIA committed the crimes for which his extradition is sought.

1
2
3

*b.   In Any Event, the Evidence Described In the*
*Superior Tribunal's Judgment of Conviction*
*Supports a Finding of Probable Cause*

4  The Superior Tribunal's judgment of conviction was based on the

5  record developed at trial and therefore the fact that PERILLA

6  UMBARILA did not participate in the appellate proceedings does not

7  alter the analysis.  See, e.g., Hughes, 2013 WL 1124294, at *2

8  (acquittal at the trial court level was reversed by Mexican appellate

9  court but fugitive fled during pendency of proceedings).  Notably,

10  Colombia has stated that PERILLA UMBARILA was aware of the appellate

11  proceedings but did not attend contrary to his obligations.  See

12  Docket No. 19-5 at 7.  However, even if the Court were to group this

13  case with the in absentia line of cases, probable cause has still

14  been established.

15  The Ninth Circuit has not definitively resolved whether the

16  fact of conviction, by itself, is sufficient to establish probable

17  cause if it was obtained in absentia.[10]  At a minimum, however, a

18  probable cause determination can be based on an in absentia judgment

19  of conviction where such judgment provides "a summary of the facts and

20

21      [10] In Haxhiaj, the Fourth Circuit noted that "the international
22  comity justification for the general rule that foreign convictions
    constitute probable cause under § 3184" could arguably extend to in
23  absentia foreign convictions, see 528 F.3d at 291 n.2, and other
    courts have found that an in absentia conviction supports a probable
24  cause finding.  See, e.g., United States v. Bogue, Case No. CRIM.A.
    98-572-M, 1998 WL 966070, at *2 (E.D. Pa. Oct. 13, 1998);
25  United States v. Avdic, No. CR. 07-M06, 2007 WL 1875778, at *8
    (D.S.D. June 28, 2007); see also, e.g., Esposito v. I.N.S., 936 F.2d
26  911, 914 (7th Cir. 1991) ("at the very least, in absentia convictions
    properly constitute probable cause to believe that the petitioner is
27  guilty of the crimes in question"); but see, e.g., Gallina v. Fraser,
    278 F.2d 77, 78 (2d Cir. 1960) ("the federal court will treat a
28  foreign conviction in absentia merely as a criminal charge").

relevant evidence." <u>Haxhiaj</u>, 528 F.3d at 289. For example, in <u>Haxhiaj</u>, the Fourth Circuit upheld a probable cause determination based on evidence summarized in an Italian appellate court opinion that affirmed the fugitive's <u>in absentia</u> conviction. <u>Id.</u> at 287-92. The Fourth Circuit further noted that "the magistrate judge has a great amount of latitude in considering evidentiary support for an extradition request." <u>Id.</u>

Haxhiaj has been widely followed. <u>See</u>, <u>e.g.</u>, <u>In re Extradition of Camelo-Grillo</u>, No. 16-cv-9026, 2017 WL 2945715, at *8 (C.D. Cal. July 10, 2017) ("The Court adopts the approach taken by the Fourth Circuit in <u>Haxhiaj</u> and other courts, in which an in absentia conviction, supported by the court's summary of the evidence presented, may provide probable cause."); <u>In re Extradition of Blasko</u>, No. 1:17-mc-00067, 2018 WL 6044921, at *7-9 (E.D. Cal. Nov. 19, 2018) (relying on Slovakian <u>in absentia</u> judgment of conviction); <u>In re Extradition of Risner</u>, No. 3:18-mj-765, 2019 WL 6118377, at *19 (N.D. Tex. Nov. 18, 2019) (relying on Colombian <u>in absentia</u> judgment of conviction); <u>In re Extradition of Manea</u>, No. 15-mj-157, 2018 WL 1110252, at *24-25 (D. Conn. Mar. 1, 2018) (relying upon Romanian <u>in absentia</u> judgment of conviction); <u>In re Extradition of Bilanovic</u>, No. 1:08-mj-74, 2008 WL 5111846, at *10-13 (W.D. Mich. Dec. 3, 2008) (relying upon Bosnia and Herzegovina court decision to convict fugitive <u>in absentia</u>).

Here, the evidence described in the Superior Tribunal's judgment of conviction establishes probable cause to believe that PERILLA UMBARILA committed the crimes for which he was charged in Colombia.

1    Specifically, there are eyewitnesses who saw PERILLA UMBARILA at

2    Umbarila-Bernal's residence prior to the murder.  A neighbor reported

3    hearing shouts and voices coming from the floor where Umbarila-

4    Bernal's apartment was located near the time that the victims were

5    murdered.  Umbarila-Bernal's daughters provided a motive for PERILLA

6    UMBARILA to kill their mother, noting that she had refused to give

7    him money, that he reacted aggressively towards her, and that she

8    decided to change the locks to prevent PERILLA UMBARILA from entering

9    her apartment uninvited.

10       The crime scene revealed no sign of forced entry.  However,

11   Umbarilla-Bernal had been hit on the head and stabbed in the neck and

12   a sock had been put in her mouth to keep her from screaming.

13   Martinez-Mendez had been stabbed nine times in the neck, back and

14   upper extremities.  He had defense wounds on his hands and forearms.

15   Umbarilla-Bernal's bedroom, where she was killed, was in disarray.

16   Police discovered a smashed piggybank, emptied jewelry boxes, and an

17   open wallet (or handbag), and a drawer and nightstand that appeared

18   to have been rifled through.

19       PERILLA UMBARILA's girlfriend noticed that he was wearing

20   different clothes when he returned to their apartment and that he was

21   carrying a blue suitcase.  Although PERILLA UMBARILA told her that he

22   changed clothes at his aunt's apartment, the police were not able to

23   locate the clothing.  The blue suitcase contained creams and sprays,

24   mobile telephones, and women's jewelry.  She also found COP 500

25   coins.  PERILLA UMBARILA's explanation of why he had these items was

26   contradicted by one of Umbarila-Bernal's daughters.

27       Accordingly, there is probable cause to believe PERILLA UMBARILA

28   committed the offenses for which his extradition is sought.

23

c. *The Individual Appearing Before the Court is the Fugitive*

The person before this Court is the person named in the Colombian arrest warrant and who has been convicted on the Aggravated Homicide, Homicide, and Robbery with Violence charges in Colombia. PERILLA UMBARILA admitted his true name as charged at his initial appearance on October 8, 2019, before Magistrate Judge Kato. (<u>See</u> Docket Nos. 7.) PERILLA UMBARILA has not denied that he is the person named in the extradition request. Moreover, counsel for PERILLLA UMBARILA did not contest his identity as being the person who has been convicted. In addition, the Colombian booking photograph strongly resembles the persons before the Court.

**IV. CONCLUSION**

For the foregoing reasons, the United States requests the certification of fugitive PERILLA UMBARILA's extraditability to Colombia on the offenses for which his extradition has been sought.

24